**In re Emmerich HANDLER, a/k/a Isaac Handler and Rita Handler a/k/a/ Rifka Handler, Debtors.**

**Israel Weinstock, Plaintiff,**

**v.**

**Emmerich Handler, Jack Walker, Kaminetzer Yeshiva of Jerusalem, and David J. Doyaga, as Trustee of the Estate of Emmerich and Rita Handler, Defendants.**

**Bankruptcy No. 00–14960–CEC.**
**Adversary No. 04–001174–CEC.**

United States Bankruptcy Court,
E.D. New York.

Feb. 14, 2005.

Gary F. Herbst, LaMonica Herbst and Maniscalco, Wantagh, NY, for Chapter 7 Trustee.

Wayne M. Greenwald, New York City, for Jack Walker.

Emmerich Handler, Rita Handler, Brooklyn, NY, for Debtors.

## DECISION

CARLA E. CRAIG, Bankruptcy Judge.

Israel Weinstock ("Weinstock") brought this adversary proceeding against Emmerich Handler, Rita Handler, Jack Walker ("Walker"), Kamenitzer Yeshiva of Jerusalem Inc. ("KYJ") and David Doyaga, in his capacity as Chapter 7 Trustee for the Estate of the Debtors. Through this action, Weinstock seeks to have the decision of the New York Supreme Court in *Walker v. Weinstock*, 173 Misc.2d 1, 658 N.Y.S.2d 167 (Sup.Ct. Kings Cty.1997), set aside as void for lack of procedural due process and to obtain a judgment that he is the rightful owner of certain property that was the subject of that state court action. Weinstock also seeks damages by reason of the alleged violation of his due process rights pursuant to 42 U.S.C. § 1983.

Walker filed a motion to dismiss this adversary proceeding, alleging, among other things, that this Court lacks subject matter jurisdiction pursuant to the *Rook-er–Feldman* doctrine. The other defendants (except for KYJ) have separately moved or have joined in the motion.

This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr.P. 7052. For the reasons set forth below, this adversary proceeding is dismissed.

### Facts

The following is a summary of the relevant factual allegations of the complaint, together with certain other facts that appear in the record. It is well established that pro se pleadings must be construed more liberally than pleadings drafted by lawyers.[1] *Platsky v. CIA*, 953 F.2d 26, 28–29 (2d Cir.1991) (dismissal of pro se complaint for failure to plead sufficient facts inappropriate, and leave to amend should have been given). That being said, Weinstock's complaint is 40 single spaced pages of prolix accusations together with 2 binders containing 38 exhibits. While it is often difficult to determine exactly what Weinstock is claiming, this Court has attempted to extract a comprehensible complaint through review of all of the materials Weinstock has provided.[2]

During the 1970's, the Debtor was a part of an ownership group that purchased two buildings located at 4200 and 4211 Avenue K, Brooklyn, New York. *Walker v. Weinstock*, 173 Misc.2d at 2–3, 658 N.Y.S.2d 167. The ownership group took title to the buildings in the name of 4200 Avenue K Realty Corporation ("4200 Corp."), a close-

---

1. Weinstock is receiving the benefit of the more liberal standard set by the Second Circuit for pro se pleadings, even though he was an attorney for many years prior to his disbarment in 2002.

2. In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference,

(*see* Federal Rule of Civil Procedure 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996)), and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *Cortec Industries et al. v. Sum Holding, L.P., et al.*, 949 F.2d 42, 46–48 (2d Cir.1991).

ly-held corporation. *Id.* at 3, 658 N.Y.S.2d 167. The New York Supreme Court found that, other than the filing of a certificate of incorporation with the New York Secretary of State, no corporate formalities were adhered to in the creation or operation of 4200 Corp. (*i.e.*, no stock was ever issued, no bylaws were created, and no bank accounts were established.) *Id.*

Walker was one of the primary investors in 4200 Corp. *Id.* Through two transactions, Walker assigned all of his stock in 4200 Corp. to Weinstock. (Complaint Doc. 12, ¶ 11; *Walker*, 173 Misc.2d at 5–6, 658 N.Y.S.2d 167).[3] In September of 1986, the Debtor, Walker and KYJ commenced a lawsuit against Weinstock to recover the stock that Walker had assigned to him, alleging, among other things, that Walker had been threatened and coerced by Weinstock and that Walker had transferred stock to Weinstock that belonged to the Debtor and KYJ. (Complaint App. No. 4).[4]

In *Walker v. Weinstock*, the New York Supreme Court declared both transfers by Walker to Weinstock void. *Walker*, 173 Misc.2d at 7, 658 N.Y.S.2d 167. The court held, among other things, that the Debtor was, at all times, the rightful owner of 4200 Corp. and that Weinstock had no claim whatsoever to either of the buildings owned by 4200 Corp. *Id.*

Weinstock appealed to the Appellate Division (255 A.D.2d 508, 680 N.Y.S.2d 177 (2nd Dept.1998)), which upheld the decision of the trial court, and to the New York Court of Appeals (93 N.Y.2d 812, 717 N.E.2d 700, 695 N.Y.S.2d 541 (1999)), which denied certiorari.

In 1997, after the trial court rendered its decision in *Walker v. Weinstock*, Walker filed a complaint against Weinstock with the Disciplinary Committee of the Second and Eleventh Judicial Districts (the "Grievance Committee"). (Complaint App. No. 14). In his complaint, Walker drew the Grievance Committee's attention to the decision in *Walker v. Weinstock*, in which the trial judge found that Weinstock's actions in coercing Walker to transfer his interest in 4200 Corp. to Weinstock to be "violative of the spirit of the canons of ethics" and "the consequence of overreaching and undue influence by [Weinstock]." *Id.* As a result of this complaint, Weinstock was disbarred in 2002. *In the Matter of Israel Weinstock*, 292 A.D.2d 1, 740 N.Y.S.2d 128 (App. Div.2d Dep't 2002). Weinstock appealed this decision as well, and the New York Court of Appeals ultimately denied certiorari. *In the Matter of Israel Weinstock*, 98 N.Y.2d 604, 773 N.E.2d 1016, 746 N.Y.S.2d 278 (2002).

In 2000, the Debtors filed a Chapter 11 petition, which was subsequently converted to this Chapter 7 case.

In 2004, Weinstock filed this adversary proceeding against the Defendants. (Doc. No. 1; 12). Weinstock alleges in his Verified First Amended Complaint for Equitable Relief (the "Complaint") that the judgment of the Supreme Court in *Walker v. Weinstock* was a result of collusion among several judges in the New York State court system, the Debtors, Walker, KYJ and the law firm of Cleary, Gottlieb, Steen and Hamilton ("Cleary"). (Complaint ¶¶ 11–17). Weinstock asserts that the Debtor and Cleary worked together to strip him of his interest in 4200 Corp. (Complaint ¶¶ 11–17). Weinstock alleges that to prevent him from continuing his efforts to reclaim his interest in 4200 Corp., and to cover their tracks, Cleary

---

3. "Doc." refers to documents listed on the bankruptcy court's docket, by docket number.

4. "Complaint App. No." refers to documents by appendix number that were submitted with Weinstock's complaint.

and the Debtor arranged to have Weinstock disbarred. (Complaint ¶¶ 18–20, 22, 26–27, 34–44).

The Debtors did not list any ownership interest in 4200 Corp. on their petition. However, the Trustee has brought an adversary proceeding (*Doyaga v. Samuel Roth, Morris Roth, Agnes Roth, Hanshe Liebowitz, Eleazer Handler and Chaim Tescher,* 02–01303–608) in which he seeks to set aside the transfer by the Debtors of their ownership interests in 4200 Corp. to Sam, Agnes and Morris Roth as a fraudulent conveyance. The Trustee asserts that the Roths subsequently refinanced and later sold the buildings owned by 4200 Corp. at the instruction of the Debtors and that a portion of the proceeds from this sale are being used to fund the Debtors' various litigations in connection with their bankruptcy. In a second adversary proceeding (*Doyaga v. Handler,* 03–01579–608), the Trustee seeks to deny the Debtors' a discharge asserting, among other things, that the Debtors did have an interest in 4200 Corp. at the time of the filing of their petition and attempted to hide such interest from the Trustee and this Court.

### Weinstock's Request to Remove this Action to the District Court

██ It is appropriate at the outset to address Weinstock's request that this Court "enter an order recommending to the United States District Court for the Eastern District of New York that . . . it withdraw the standing bankruptcy reference of this non-core proceeding." (Complaint, VI ¶ (a)). Fed. R. Bank. P. 5011(a) provides that "A motion for withdrawal of a case or proceeding shall be heard by a district judge." Thus, a request for a withdrawal of the reference must be made by motion to the district court. Weinstock previously made a motion for withdrawal of the reference to this Court, which was denied without prejudice to renewal before the district court. If Weinstock wishes to seek the withdrawal of the district court's reference, he should bring on a motion to the district court in accordance with the applicable rules. Weinstock's request in the Complaint that this Court enter an order recommending the withdrawal of the reference is therefore denied.

### Walker's Motion to Dismiss

Walker has moved to dismiss the Complaint in this adversary proceeding on the grounds that this Court lacks subject matter jurisdiction, both under the *Rooker–Feldman* doctrine and pursuant to 28 U.S.C. § 1334; that principles of res judicata preclude Weinstock from pursuing the claims asserted in the Complaint; that Weinstock's § 1983 claims are time-barred; and that the Complaint fails to comply with pleading requirements of Fed. R.Civ.P. 8 and 9 and was not properly served. For the reasons discussed below, the *Rooker–Feldman* doctrine compels dismissal of the Complaint, and the other grounds for dismissal accordingly are not reached.

### Rooker–Feldman Doctrine Precludes this Court from Deciding this Matter

██ "The *Rooker–Feldman* doctrine provides that 'lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment'." *In re Ivani,* 308 B.R. 132, 136 (Bankr.E.D.N.Y.2004), *citing Neshewat v. Salem (In re Salem),* 290 B.R. 479, 482 (S.D.N.Y.2003), *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998). The doctrine was established by two Supreme Court cases, (*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Co-*

lumbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)) and is predicated upon 28 U.S.C. § 1257, pursuant to which the United States Supreme Court is the only federal court which may hear appeals from determinations of state courts.

■ The *Rooker–Feldman* doctrine applies even where the state court adjudication was erroneously decided. *In re Ivani*, 308 B.R. at 137, n. 1, *citing Bell*, 2000 WL 1273637 at *4, 2000 U.S. Dist. LEXIS 12854 at *13 (an erroneous judgment must continue to be given effect until it is modified in an appropriate appellate proceeding in the appropriate forum). That is, "[the bankruptcy] court is precluded from acting as an appellate court to determine if the state court decision was appropriate." *In re Ivani*, 308 B.R. at 137, n. 1, *citing Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 258 B.R. 554, 565 (Bankr. E.D.N.Y.2001).

■ The *Rooker–Feldman* doctrine requires that its applicability be determined before a court considers other defenses, including res judicata. *Harris v. N.Y. State Dep't of Health*, 202 F.Supp.2d 143, 160 (S.D.N.Y.2002), *citing GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728–729 (7th Cir.1993) (holding that the district court erred by dismissing the case on the basis of res judicata because *Rooker–Feldman* applied and thus deprived the court of jurisdiction); *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 703 (7th Cir.1998) ("If Rooker–Feldman applies, a res judicata claim must not be reached."); *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996). *Rooker–Feldman* is therefore distinct from res judicata. However, the *Rooker–Feldman* doctrine and preclusion rules produce a similar outcome: the plaintiff is barred from bringing the case in federal court.

■ "The *Rooker–Feldman* doctrine bars both direct and collateral attacks on state court final judgments, and for this reason the state and federal claims do not need to be identical in order for the doctrine to apply." *Ivani*, 308 B.R. at 136. Where a federal claim is "inextricably intertwined" with a state court determination, *Rooker–Feldman* applies, and lower federal courts lack jurisdiction to hear the matter. *Id.; Feldman*, 460 U.S. at 482–84 n. 16, 103 S.Ct. 1303.

In *Feldman*, the Supreme Court stated that claims are inextricably intertwined with a state court judgment when either: (a) the case brought in federal court by the party unsuccessful in state court amounts merely to a recasting of losing claims under a semblance of federal law or causes of action not decided or interposed in the prior state proceeding, so that "in essence" the district court is being called upon to undertake appellate review of the state court decision, or (b) the federal proceeding represents not a "general challenge" to a state law or rule, but rather a more "particularized challenge" to a state court adjudication as it applies to or affects the federal plaintiff. *Feldman*, 460 U.S. at 485–86 n. 16 and n. 18, 103 S.Ct. 1303.

■ The Second Circuit has held that, in determining whether a federal claim is inextricably intertwined with a previous state court determination, principles of preclusion may be consulted. Thus, "at a minimum, ... where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996) (*citing Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25, 107 S.Ct.

1519, 95 L.Ed.2d 1 (1987)). Put differently, "a federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent the state court wrongly decided the issues before it.'" *Ivani*, 308 B.R. at 137, *citing Bell*, 2000 WL 1273637 at *4, 2000 U.S. Dist. LEXIS 12854 at *13.

■ Although, as the Supreme Court has noted, it "may sometimes be difficult to answer" whether a claim is inextricably intertwined with a prior state court determination, *Pennzoil*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (Marshall, J. concurring), it is not difficult in this case. It is apparent that the claims Weinstock asserts are inextricably intertwined with the merits of the state court adjudication in *Walker v. Weinstock*. The complaint amounts to a request for an appellate review of that state court judgment and is therefore barred by the *Rooker–Feldman* doctrine.

In his prayer for relief, Weinstock requests a judgment declaring the decision in *Walker v. Weinstock* to be void as the product of "extrinsic fraud and judicial collusion". (Complaint VI ¶ (b)). Weinstock also requests that the defendants be required to disgorge any gains traceable to the *Walker v. Weinstock* judgment. (Complaint VI ¶ (b)). The relief goes to the very essence of the state court's judgment.

Weinstock's claim rests on the assertion that the judge in *Walker v. Weinstock* departed from "established modes of procedure" and suborned perjury of the Debtor and Walker. (Complaint ¶ 2). Weinstock's procedural due process claim does not reflect a "general challenge" to the sufficiency of New York state's judicial rules; rather, it is a particularized challenge that, as applied to him, the procedures followed by the court were deficient and that the decision in *Walker v. Weinstock* was not grounded on applicable law,

and thereby violated his right to due process. *Feldman*, 460 U.S. at 485–486, 103 S.Ct. 1303. The Second Circuit has stated that to prevail under a procedural due process claim, a plaintiff must show that the procedural safeguards established by the state are insufficient to protect his rights. *Moccio*, 95 F.3d at 200. Weinstock makes no such assertion in his complaint.

Furthermore, Weinstock has had a full and fair opportunity to litigate his federal claim in state court. Weinstock omits to mention in his complaint that he appealed the trial court's decision in *Walker v. Weinstock*. The record in that case shows that in upholding the trial court's judgment the Appellate Division, Second Department held that the

> trial evidence amply supports the Supreme Court's determination that the appellants Israel Weinstock and JB Trading International, Ltd., had no interest in 4200 Avenue K Realty Corporation or the property owned by the corporation. The terms of, and the circumstances surrounding, the assignments through which the appellants claim ownership rendered those assignments void as the products of coercion and overreaching. *Walker v. Weinstock*, 255 A.D.2d 508 (N.Y. App Term 1998).

Weinstock could have raised his procedural due process claims in his appeal to the Appellate Division and in his subsequent motion for leave to appeal to the New York State Court of Appeals. *Migra v. Warren City School District Board of Education, et al.*, 465 U.S. 75, 84–85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56, 64 (1984) (by failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court); *Moccio*, 95 F.3d at 199 (holding the *Rooker–Feldman* doctrine may bar assertion in federal court not only

of issues and claims actually presented in state court but of those that could have been raised.) He could also have raised them in the proceeding that resulted in his disbarment, and in his appeal from the Appellate Division's determination.

In essence, Weinstock is requesting that this Court reverse the determination by the New York State Supreme Court, Kings County and Appellate Division, Second Department that he has no interest in 4200 Corp. or any property owned by 4200 Corp. This outcome would require this Court to perform an appellate review of a state court's decision and grant Weinstock the relief he was denied in that state court proceeding. This is exactly what the *Rooker–Feldman* doctrine prohibits federal courts from doing. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. Weinstock's complaint will only succeed if this Court determines that the New York courts that considered this matter each made an incorrect determination and overrules those determinations. *See Ivani* 308 B.R. at 137; *Harris,* 202 F. Supp.2d at 163; *Pennzoil,* 481 U.S. at 25, 107 S.Ct. 1519. For all of these reasons, the claims asserted in this action are inextricably intertwined with the state court's determination.

The same conclusion must be reached with respect to Weinstock's § 1983 claim. Weinstock's claim for damages resulting from the loss of his interest in 4200 Corp., like his request that the judgment awarding that interest to the Debtor in *Walker v. Weinstock* be set aside, can succeed only if the state court determinations in *Walker v. Weinstock* were wrong. Similarly, Weinstock's claim for damages resulting from his disbarment (which was based upon the findings of the trial court in *Walker v. Weinstock*) can succeed only if those findings were incorrect, *and* only if

the Appellate Division's decision to disbar him (which was also appealed to New York's highest court) was also incorrect. *Feldman,* 460 U.S. at 483, 103 S.Ct. 1303 ("[Orders] of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court." *quoting MacKay v. Nesbett,* 412 F.2d 846 (9th Cir.1969)).

In his opposition to the motion to dismiss Weinstock asserts that the *Rooker–Feldman* doctrine does not apply to a separate, independent and original action in the nature of a bill of equity. (Pl. Opp., Doc. 19, at 21)[5]. Citing the Sixth Circuit's decision in *Catz v. Chalker,* 142 F.3d 279 (6th Cir.1998), Weinstock contends that a federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident or mistake. (Pl. Opp. at 26).

Weinstock misreads the Sixth Circuit's decision in *Catz.* There, the court held that the *Rooker–Feldman* doctrine did not bar a federal plaintiff's due process challenge to procedures established by a state in connection with obtaining a divorce decree because the challenged procedures were not inextricably intertwined with the merits of the divorce decree. *Catz,* 142 F.3d at 294. Courts in this Circuit have held that where *Rooker–Feldman* is applicable, a federal court is precluded from hearing the matter even when the plaintiff alleges that the state court determination was the product of fraud. *Smith v. Weinberger,* 994 F.Supp. 418, 424 (E.D.N.Y.1998) (holding that the fact that the plaintiff alleges that the state court

5. "Pl. Opp." refers to "Plaintiff Israel Weinstock's Response in Opposition [sic] to Defendant Jack Walker's Motion for Orders Dismissing Action".

judgment was procured by fraud does not remove his claims from the ambit of *Rooker–Feldman*). For example, in *Levitin v. Homburger, et al.*, the plaintiff claimed that his former partner and partnership's law firm fraudulently conspired to obtain a court order to sell the plaintiff's interest at a judicial sale without informing him. 932 F.Supp. 508, 513 (S.D.N.Y.1996). Citing the *Rooker–Feldman* doctrine, the court concluded that such a claim could not be entertained in district court. *Id.* at 517–19. This determination was affirmed by the Second Circuit in an unpublished decision. 107 F.3d 3 (2d Cir.1997).

Similarly, in *Zipper v. Todd*, the plaintiffs, former directors of a company, filed suit in district court alleging that the various defendants had fraudulently obtained approval in a Kansas state court of an order liquidating the company. No. Civ. 96–5198, 1997 WL 181044 *1, 1997 U.S. Dist. LEXIS 4770 *1–3 (S.D.N.Y.1997). The district court concluded that "it is clear that this court lacks jurisdiction over plaintiff's present cause of actions pursuant to the Rooker–Feldman doctrine. Plaintiff's allegations of fraud ... are unavailing." *Id.*, 1997 WL 181044 at *6, 1997 U.S. Dist. LEXIS 4770 at *19 (citations omitted).

Pursuant to the *Rooker–Feldman* doctrine, therefore, Weinstock's complaint must be dismissed because a state court of competent jurisdiction has already reached a judgment on the merits with respect to Weinstock's claim to ownership interests in 4200 Corp., and in the buildings in question, and with respect to the appropriateness of Weinstock's disbarment. Both of those decisions have been appealed to the highest court in New York state. Weinstock's only remedy in federal court would have been to seek review by the United States Supreme Court. *Centres*, 148 F.3d 699, 701 ("Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court").

Walker's additional grounds for dismissal need not be considered. Because this Court lacks subject matter jurisdiction, Weinstock cannot cure deficiencies in the complaint by amendment.

Walker is directed to settle an order consistent with the foregoing, dismissing the complaint as to all the defendants.